## Stuart v. Clements.

(Decided October 17, 1919.)

### Appeal from Daviess Circuit Court.

1. Landlord and Tenant—Use of Manure for Agricultural Purposes.
   —Manure produced upon leased premises for agricultural purposes which was produced by cattle owned by the lessee and fed with produce, also owned by him, but which produce was grown upon the leased premises, belongs to the lessor, and the tenant will be liable to him for its value if the manure should be removed from the premises.

2. Landlord and Tenant—Use of Manure for Agricultural Purposes —Customs and Usages.—The rule is different, however, if there is a usage or custom in the neighborhood to the contrary; provided such custom or usage was known to the parties, or of such universal and continuous application as to be presumed to have been known and such custom is not against public policy.

3. Appeal and Error—Harmless Error.—An error in overruling a demurrer to a bad paragraph of a pleading is not harmless so as to require a reversal of the judgment if the record affirmatively shows that the judgment was rendered upon the issues presented in good paragraphs of the pleading, and where the answer contained two paragraphs to each of which a demurrer was filed by plaintiff, which was overruled, and plaintiff declined to plead further when his petition was dismissed, the judgment will be affirmed, although upon appeal one of the paragraphs to which the demurrer was overruled was found to be insufficient,

since in that instance the record affirmatively shows that the judgment was rendered upon the admittedly good paragraph.

R. M. STUART for appellant.

CLEMENTS & CLEMENTS for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

The appellee and defendant below, Mrs. Charles Clements, was a tenant for the years 1915, 1916 and 1917, of the appellant and plaintiff below, Mrs. C. G. C. Stuart, who owned the leased farm which is situated in Daviess county, Kentucky. After the expiration of the tenancy, plaintiff filed this suit against defendant, seeking to recover of the latter the sum of $216.00, alleged to be the value of thirty-six loads of manure, twelve of which the defendant had sold from the leased premises, and twenty-four of which she had removed from the premises just before the expiration of the lease.

The first paragraph of the answer denied some legal conclusions alleged in the petition, as well as some facts not going to the merits of the case, and the second paragraph in substance stated that the manure was made by cattle exclusively owned by defendant, which had been fed with produce also owned by her, and it was therein insisted that these facts gave the defendant the right to dispose of the manure. But it was nowhere denied but that the produce fed to the cattle was grown upon the leased premises, although it was the property of the tenant, being his portion of the crop, supplemented by a small portion purchased from the landlord, which was also grown upon the premises.

The third paragraph relied upon a usage and custom prevailing in the neighborhood for many years, to the effect, as stated, "that where the tenant furnished their own feedstuffs for live stock, the manure produced by such live stock so fed with feed belonging to the tenant, became his personal property with the right of removal or sale by such tenant." It was then alleged that the custom so relied upon "was well known to both plaintiff and defendant at the time the contract for the rental of said farm was made and executed and it was made in view of said custom."

A demurrer was filed to each of paragraphs two and three, which the court overruled, and the plaintiff de-

clining to plead further, her petition was dismissed, and complaining of that judgment she has filed the transcript in this court, accompanied by a motion for an appeal.

The action of the court in overruling the demurrer to the second paragraph of the answer presents a question which, so far as we have been able to ascertain, has not heretofore been before this court, but it has quite frequently been before the highest courts in other states and countries, and has received consideration by able text-writers upon the subject, and with but a single exception it has been held that under the facts presented by the paragraph of the answer under consideration, as between landlord and tenant, manure produced upon the leased premises is the property of the landlord, in which the tenant has no interest, and for which he is liable if he removes or sells it without the consent of the lessor. 24 Cyc. 1967; Laswell v. Reed, 6 Me. p. 222; Perry v. Carr, 44 New Hamp. 118; Daniel v. Pond, 21 Pick 367; Lewis v. Layman, 22 Pick 437; Connor v. Coffin, 22 New Hamp. 541; Plummer v. Plummer, 30 New Hamp. 558; Elting v. Palem, 60 Hun. (N. Y) 306; Middlebrook v. Corwin, 15 Wend. 162; Enoch Wetherbee v. Adolphus Ellison, 19 Vermont 379; Brigham v. Overstreet, 10 L. R. A. 452; 57 S. E. 487; 128 Ga. 447; Bonnel v. Allen, 53 Ind. Rep. 130; Gallagher, et al. v. Shipley, 24 Maryland 418, 19 Amer. & Eng. Ency. 927; Taylor's Landlord and Tenant, sections 541 and 693; Pickering v. Moore, 31 L. R. A. 698 and annotations; Brigham v. Overstreet, 10 L. R. A. (N. S.) 452; Munier v. Zachery, 18 L. R. A. (N. S.) 572 and annotations; Washburn on Real Property, vol. 1, top page 609, and 16 R. C. L. pages 754 and 755.

The general doctrine as announced by the above authorities is very succinctly stated in the volume of Cyc. referred to, thus:

"The general rule is that manure made by a tenant upon leased farm lands in the ordinary course of husbandry is, in the absence of special agreement to the contrary, the property of the lessor, and belongs to the farm as an incident necessary for its improvement and cultivation, and the tenant has no right to remove it from the premises or apply it to any other use. However, manure made in livery stables, or in buildings unconnected with agricultural property, belongs to the tenant, unless there be a contract to the contrary; and it has

been held that a tenant is entitled to manure made from fodder grown elsewhere and bought by him."

The reason underlying this principle of law which led the courts to its adoption is thus stated in the case of Lassell v. Reed, *supra*:

"It is our duty to guard and protect the interests of agriculture as well as trade. It is obviously true as a general observation that manure is essential on a farm; and that such manure is the product of the stock and kept on the farm and relied upon as annually to be appropriated to enrich the farm and render it productive, if at the end of the year, or of the term where the lease is for more than a year, the tenant may lawfully remove the manure which has been accumulated, the consequence will be the impoverishment of the farm for the ensuing year, or such a consequence must be prevented at an unexpected expense, occasioned by the lessee; or else the farm destitute of manure must necessarily be let at a reduced rent or unprofitably occupied by the owner."

Some of the cases hold to the rule as above stated absolutely, without regard to the fact of the feed consumed by the stock which produced the manure having been grown on premises other than the one leased, while other cases hold that when the manure is produced from feed grown on other premises, it becomes the property of the tenant. However, we are not called upon to discuss this distinction, since in the instant case the feed, as we have seen, grew upon the leased premises from which the tenant claimed the right to remove it. In such case there has been but one dissent, so far as we have been able to discover, from the general rule, that being the case of Smithwick v. Ellison, 24 N. C. 326, 38 Amer. Dec. 697. The cases, while announcing the rule as stated, confine its application to manure produced upon agricultural lands in the usual and ordinary course of husbandry. It has no application to accumulations of manure in livery stables and places other than agricultural premises. The reasoning of the courts as well as textwriters in applying the doctrine to agricultural leases commends itself as being sound, and we unhesitatingly adopt it as being the correct rule governing the rights of landlord and tenant in the character of leases referred to. The rule, however, is deducible from the mere fact of the relationship of landlord and tenant, and "in the ab-

sence of covenant or custom to the contrary." 16 R. C. L. *supra.*

In Taylor's Landlord and Tenant, section 542, speaking of the effect of a custom or usage of a neighborhood upon the general rule it is said: "There may be mutual privileges founded on the common usage of a neighborhood, to which outgoing and incoming tenants are entitled," and all of the authorities are of one accord that it is competent for the parties to agree between themselves as to who shall have the right to the manure produced.

The third paragraph of the answer, relying upon a usage and custom of the neighborhood, brings the case within the exception to the general rule above and the court was clearly right in overruling the demurrer to it. But counsel for plaintiff in their brief insist upon the well established rules governing the admission of a custom or usage as forming a part of the terms of a contract requiring that the usage or custom relied on must, unless actually known, be general in the locality, and of such duration as to raise the presumption that the parties contracted with reference to it, and that no custom or usage will be upheld if it is against public policy. These limitations on the admission of a custom or usage as entering into the terms of contracts are well settled, and are of universal application; but the first one is eliminated in this case by the very terms of the third paragraph of the answer, which expressly states that the pleaded custom was well known by both plaintiff and defendant, and that the lease contract was made and executed in view of it. We know of no public policy that would be invaded by upholding the custom, for the general rule above announced was adopted not so much in furtherance of a public policy, but because it was thought by the courts to best subserve the industry of agriculture. Besides, the same authorities, *supra,* announcing the general rule also say that it may be modified by a prevailing usage or custom. It is well established that a custom which is lawful, and which is permitted to enter into contracts made with reference to it, becomes a part of the contract the same as if the custom were incorporated therein, and the rights of the parties to the contract are to be governed by the pro-

visions of the custom or usage. This doctrine of the law is so axiomatic that we deem it unnecessary to refer to authorities in substantiation of it.

It results, therefore, that the court was in error in overruling the demurrer to the second paragraph of the answer, but the order overruling it to the third paragraph of that pleading was proper. Since, however, the third paragraph contained a complete defense, and plaintiff declined to plead further, there was no alternative except to dismiss the petition.

At this point a somewhat troublesome question of practice is presented, which is whether in view of the state of the record and our rulings thereon the judgment should be affirmed or reversed. It is insisted in the petition for a rehearing filed by appellant that we should order a reversal of the judgment with directions to sustain the demurrer to the second paragraph of the answer, with leave for plaintiff to reply to the third paragraph if she so desires. This upon the ground that under the ruling of the trial court upon the demurrer to the answer, in which it erroneously held the second paragraph thereof sufficient, it would have been a vain and useless thing for plaintiff to reply to the third paragraph denying the custom therein alleged. Opposing this, it may be urged that this court is one of review only, exercising appellate jurisdiction exclusively, and must determine causes from the exact conditions as shown by the record to exist at the time the judgment appealed from was rendered, although we might find that the court may have committed an intervening error against appellant, which error could not and did not influence the final judgment, as it was the only one the court could have rendered in any event.

It must be admitted that on the surface the contention of appellant has at least a measure of plausibility, but an analysis of the situation will, we think, demonstrate its weakness. This court, not being one of original jurisdiction in cases like this, must determine causes brought before it by appeal from the transcript only, which is but a photograph, so to speak, of what occurred in the court below. Pleadings can not be filed here, and we can not presume that any of the parties to the appeal desire to or will file additional pleadings upon a return of the case, or make issues which they declined to

do when they elected to risk their cause upon the state of the pleadings at the time the judgment was rendered.

It is true that in volume 6, Ency. of Pleadings and Practice 367, it is said that: "The overruling of a demurrer to a bad answer or a bad paragraph of an answer is generally such an error as will require a reversal of the judgment thereon. This is the case, even though there be other good answers or paragraphs under which evidence of the matter alleged in the one improperly overruled is admissible." In support of the statement in the text are a number of cases from the Indiana Supreme Court, and an examination of them reveals the fact that the bad paragraph of the pleading demurred to as well as the good ones therein, were pleaded to, and a trial was had upon evidence introduced, but the records in the cases did not disclose whether the judgment was rendered because of the issue presented by the bad paragraph or those presented by the good paragraphs, for which fact alone the judgments were reversed.

But, in the case of Hill v. Pollard, 132 Ind. 588, the same court held that if the record disclosed that the judgment was rested entirely upon the facts alleged in the good paragraphs, the error in overruling the demurrer to the bad one would be harmless. In that case the answer contained two paragraphs, to each of which a demurrer was filed by the plaintiff and overruled. Issue was joined, and the court found the facts alleged in the second paragraph to be true. Upon appeal it was held that there was error in overruling the demurrer to the first paragraph of the answer, but held that it was properly overruled as to the second paragraph. Commenting upon the effect to be given that error upon appeal, the court, affirming the judgment in favor of defendant, said:

"From this finding (that the facts in the second paragraph were true), it is clearly apparent that the appellants were not harmed by the ruling on the demurrer in overruling of the demurrer to the first paragraph and that the finding and judgment rest on the second paragraph."

Almost the precise question now under consideration was before the appellate court of Indiana in the case of Morrison v. Kendall, 6 Ind. Appellate Reports, 212 That was a suit upon a note to which the defendant an-

swered in three paragraphs. The first one pleaded a novation; the second relied upon the statute of limitations in Indiana, and the third relied upon the same stateute of Michigan, to which state the defendant had removed between the time of the execution of the note and the filing of the suit. A demurrer was field to each paragraph and overruled. Plaintiff elected to stand upon the demurrer and judgment went against him. Upon appeal it was held that the court should have sustained the demurrer to the first paragraph of the answer, but that it was properly overruled as to the second and third paragraphs. In affirming the judgment the court said:

"We have here two other paragraphs of an answer, to which demurrers were overruled. The plaintiff refused to plead over, but elected to abide the ruling of the court. The demurrers to these paragraphs admitted the truth of all the facts that were well pleaded, for the purposes of the demurrers only; but the plaintiff has gone one step beyond—he refused to plead further, and prayed the judgment of the law on the facts contained in these answers. His position is the same as if he should say, 'I confess the facts for all purposes in the case, but deny the law.' If the law be against him his right to recover is forever gone. He has confessed a fact which must ultimately destroy his right to a recovery. If this court should reverse the case, with instructions to the trial court to sustain the demurrer to the first paragraph of answer, as soon as that should be done the defendant might then move for judgment in his favor as upon a default."

The learned author of Elliott on Appellate Practice, who was a member of the Supreme Court of the State of Indiana during the time of the opinions referred to were rendered, in section 637 of that work, says:

"Where the record shows that the judgment rests entirely on good paragraphs of a complaint an error in overruling a demurrer to a bad paragraph will be regarded as harmless. So, where the record affirmatively shows that no harm resulted from overruling a demurrer to one of several paragraphs of an answer the error will be deemed not prejudicial. . . . Where facts are admitted in an agreed statement an error in overrul-

ing a demurrer to a bad paragraph of answer is, as it has been held, rendered harmless."

Again, in section 666, it is said:

"Where a demurrer is overruled to a bad paragraph of a complaint consisting of several paragraphs, there is prejudicial error unless the record affirmatively shows that the judgment rests on a good paragraph or paragraphs. If the record proper clearly shows that the judgment rests on the good paragraph or paragraphs there is no available error, since the court can see from an inspection of the record that no harm was done the complaining party."

In the instant case there is no *agreed statement of facts*, nor is there any *evidence* from which this court by an inspection of the record can determine that the judgment appealed from was rested on any particular paragraph of the answer, but paragraph three, which we hold sufficient 'to constitute a defense, is as effectually admitted by the demurrer, and to which the plaintiff declined to plead, as if evidence had been introduced to establish it, or there had been an agreed statement of facts showing its truth. We therefore conclude that the authorities, *supra,* as well as the rules governing appellate practice require us, under the condition of this record, to affirm the judgment, since we must dispose of the cause from the record before us and not from one which plaintiff might make if given a second opportunity.

Wherefore, the motion for an appeal is sustained, the appeal granted, and the judgment is affirmed.